**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JAMESTOWN S'KLALLAM TRIBE**<br>1033 Old Blyn Highway<br>Sequim, WA 98382<br><br>PLAINTIFF,<br><br>v.<br><br>**ALEX M. AZAR**, in his official capacity as Secretary,<br>U.S. Department of Health & Human Services<br>200 Independence Ave, S.W.<br>Washington, DC 20201<br><br>**RADM MICHAEL D. WEAHKEE**, in his official capacity as Principal Deputy Director,<br>Indian Health Service<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>DEFENDANTS. | ) | Civil Action No. 19-____<br><br>**COMPLAINT** |

Served: The Honorable William Barr
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

The Honorable Jessie K. Liu
United States Attorney for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW
Washington, D.C. 20530

**COMPLAINT FOR DECLARATORY, MANDAMUS, AND INJUNCTIVE RELIEF**

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

## INTRODUCTION

1.      The Jamestown S'Klallam Tribe ("Tribe") brings this action against the Secretary of Health and Human Services and the Principal Deputy Director of the Indian Health Service ("IHS") under the Indian Self-Determination and Education Assistance Act ("ISDEAA"). The Tribe is a participant in the Self-Governance program under Title V of the ISDEAA and has a Compact and Funding Agreement ("FA") with the IHS, under which the Tribe carries out health care programs for its members, other eligible Indians, and non-Indians in the Tribe's service area. This action appeals an IHS rejection of the Tribe's proposed compensation for a lease under section 105(*l*) of the ISDEAA, 25 U.S.C. § 5324(*l*), for fiscal year ("FY") 2018.

2.      As a participant in self-governance, the Tribe owns and operates the Jamestown Family Health Center, a 34,632 square foot facility providing health care services to tribal members, other eligible Indians, and predominantly to non-Indians in the Tribe's service area. Section 813(c)(2) of the Indian Health Care Improvement Act ("IHCIA") authorizes the Tribe to provide health services to non-Indians at the Health Center on a fee-for-service basis and deems such services to be provided under the ISDEAA and the Tribe's self-governance Compact and FA as a matter of law. 25 U.S.C. § 1680c(c)(2).

3.      To facilitate and enhance health programs provided by tribes, section 105(*l*) of the ISDEAA requires the IHS to lease tribally owned facilities used by the tribe "for the administration and delivery of services under [the ISDEAA]." 25 U.S.C. § 5324(*l*)(1). IHS must fully fund the reasonable, non-duplicative costs of operating and maintaining the facility under the lease. 25 U.S.C. § 5324(*l*)(2); 25 C.F.R. § 900.69; *Maniilaq Ass'n v. Burwell*, 170 F. Supp. 3d 243, 254–55 (D.D.C. 2016) ("*Maniilaq II*").

4.     The Tribe proposed to lease to IHS the Jamestown Family Health Center, a tribally owned facility used to carry out the Tribe's ISDEAA contract with IHS. During negotiations, the parties agreed that the valid operational costs for FY 2018 totaled $514,826. Yet IHS proposed to pay only about 20.4% of this amount (less applicable offsets), based on its position that 105(*l*) prohibits IHS from paying for space allocable to "non-beneficiaries"—primarily non-Indians—even though section 813 of the IHCIA deems services to non-beneficiaries to be provided under the ISDEAA. 25 U.S.C. § 1680c(c)(2). The 20.4% share of the Center facility was calculated by IHS using its supportable space methodology in the IHS Office of Environmental Health and Engineering ("OEHE") Technical Handbook. Using the Handbook methodology, IHS calculated that only 7,060 square feet, or 20.4% of the 34,632 square foot Health Center facility, was required to serve the Indian patients.

5.     Applying this Handbook methodology to calculate the space necessary to serve only Indians ignores section 813(c)(2) of the IHCIA, which deems the Center's services to non-Indians to be provided under the Tribe's ISDEAA agreements. IHS may want to substitute its Handbook for federal law governing who can be served under the ISDEAA. However, Congress has made that decision. Section 105(*l*) requires leasing of facilities used by a tribe "for the administration and delivery of services under [the ISDEAA]." 25 U.S.C. § 5324(*l*)(1).

6.     The Tribe submitted a "final offer," *see* 25 U.S.C. § 5387(b), proposing that IHS pay the full negotiated amount for the Health Center lease. IHS rejected that final offer on the ground that the Tribe's proposed lease compensation exceeded the funding level to which the Tribe was entitled. *See* 25 U.S.C. § 5387(c)(1)(A)(i).

7.     In this action, the Tribe challenges the IHS decision. The Tribe respectfully asks this Court for relief under section 110 of the ISDEAA, which authorizes actions against the

agency for money damages or injunctive relief against any action by an officer of the United States contrary to the ISDEAA, including injunctive relief to reverse the IHS decision and compel the IHS to fund the contract as proposed, including the 105(*l*) lease. 25 U.S.C. § 5331(a); *see also* 25 U.S.C. § 5391(a) ("contract," for purposes of section 110, includes compacts and funding agreements, such as the Tribe's, under Title V of the ISDEAA). This court has twice dealt with IHS rejections of proposed section 105(*l*) leases and overturned those rejections. *See Maniilaq Ass'n v. Burwell*, 72 F. Supp. 3d 227 (D.D.C. 2014) ("*Maniilaq I*"); *Maniilaq II*, 170 F. Supp. 3d 243. The first decision upheld a tribal organization's use of the ISDEAA final offer procedure for a section 105(*l*) lease proposal. The second decision required full funding of section 105(*l*) leases.

**PARTIES**

8. The Plaintiff, the Jamestown S'Klallam Tribe, is a federally recognized Indian tribe.[1] The Tribe operates the Jamestown Family Health Center in Sequim, Washington. The Tribe operates health facilities and provides health care services to its members, other IHS beneficiaries, and non-beneficiaries pursuant to its self-governance compact and funding agreements with the IHS under Title V of the ISDEAA, 25 U.S.C. § 5381 et seq.

9. Defendant Alex M. Azar, the Secretary of Health and Human Services ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

10. Defendant Rear Admiral Michael D. Weahkee is the Principal Deputy Director and the acting head of the IHS, the agency charged by law with the responsibility for

[1] Dep't of the Interior, *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 84 Fed. Reg. 1200, 1202 (Feb. 1, 2019).

implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). He is sued in his official capacity.

**JURISDICTION AND VENUE**

11. This court has jurisdiction under § 110(a) of the ISDEAA, 25 U.S.C. § 5331(a), which provides in pertinent part:

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this [Act] . . . In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this [Act] or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [Act] or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract.)

12. Section 5331(a) is made applicable to self-governance compacts and funding agreements under 25 U.S.C. § 5391(a). A self-governance tribe, in lieu of administratively appealing an IHS rejection of its final offer, may "directly proceed to initiate an action in a Federal district court pursuant to section 5331(a) of this title[.]" 25 U.S.C. § 5387(c)(1)(C).

13. Venue is proper under 28 U.S.C. § 1391(e) because the U.S. Department of Health and Human Services is located in the District of Columbia.

**STATUTORY BACKGROUND**

14. The ISDEAA authorizes Indian tribes and tribal organizations to assume responsibility to administer programs, functions, services, and activities ("PFSAs") that the Secretary would otherwise be obligated to provide under federal law to Indians and Alaska Natives. 25 U.S.C. § 5321(a)(1). The purpose of the ISDEAA is to reduce federal domination of Indian programs and promote tribal self-determination and self-governance. 25 U.S.C. §

5302(b); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005).  The ISDEAA reflects the United States' commitment "to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." 25 U.S.C. § 5302(b).

15. Title V of the ISDEAA requires the Secretary to establish and carry out within the IHS a program known as the "Tribal Self-Governance Program." 25 U.S.C. § 5382.  Title V requires the Secretary to negotiate and enter into self-governance compacts and funding agreements with tribes and tribal organizations participating in the self-governance program. 25 U.S.C. §§ 5384–5385.  The Tribe carries out a compact and funding agreement under Title V.

16. Section 105(*l*) requires IHS to enter into a lease for a facility the Tribe owns and uses "for the administration and delivery of services under [the ISDEAA]." 25 U.S.C. § 5324(*l*)(1).  IHS must fully compensate the Tribe for the lease: "Such compensation may include rent, depreciation based on the useful life of the facility, principal and interest paid or accrued, operation and maintenance expenses, and such other reasonable expenses that the Secretary determines, by regulation, to be allowable." 25 U.S.C. § 5324(*l*)(2).

17. IHS, along with the Bureau of Indian Affairs, has promulgated regulations governing the leasing process, including compensation.  *See* 25 C.F.R. Part 900, Subpart H.

18. Section 813 of the IHCIA authorizes tribes and tribal organizations operating ISDEAA agreements to provide services to individuals who would not otherwise be eligible for IHS services—i.e., non-beneficiaries—if the governing body of the tribe or tribal organization determines that "the provision of such services will not result in a denial or diminution of health services to eligible Indians." 25 U.S.C. § 1680c(c)(2); 25 U.S.C. § 1680c(c)(1)(B).  Such services to non-beneficiaries must be provided on a fee-for-service basis, 25 U.S.C.

§ 1680c(c)(3), and "shall be deemed to be provided under the agreement entered into by the Indian tribe or tribal organization under the [ISDEAA]." 25 U.S.C. § 1680c(c)(2).[2]

19. Because they are deemed to be provided under the ISDEAA agreement, services to non-beneficiaries under Section 813 receive a number of critical benefits conferred by the statute: Federal Tort Claims Act coverage,[3] access to federal sources of supply,[4] access to excess and surplus federal property,[5] and flexibility in the use of funds.[6]

20. Title V of the ISDEAA provides for a "final offer" process in the event of a stalemate in negotiations for funding agreements. Section 507(b) of the ISDEAA, 25 U.S.C. § 5387(b), provides:

> In the event the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement (including funding levels), the Indian tribe may submit a final offer to the Secretary. Not more than 45 days after such submission, or within a longer time agreed upon by the Indian tribe, the Secretary shall review and make a determination with respect to such offer. In the absence of a timely rejection of the offer, in whole or in part, made in compliance with subsection (c), the offer shall be deemed agreed to by the Secretary.

21. Subsection 507(c) of the ISDEAA, 25 U.S.C. § 5387(c), provides that if the Secretary rejects a final offer, the Secretary shall provide "timely written notification to the

---

[2] The population served under § 1680c(c) is distinct from other otherwise ineligible groups section 813 makes eligible for IHS services—for example, children of eligible Indians up to the age of 19, 25 U.S.C. § 1680c(a), and spouses of eligible Indians, provided the tribal government has, by resolution, made spouses eligible, 25 U.S.C. § 1680c(b).

[3] *See* 25 U.S.C. § 5321(d); 25 U.S.C. § 5396(a); 25 C.F.R. Part 900, Subpart M.

[4] 25 U.S.C. § 5324(k).

[5] 25 U.S.C. § 5324(f).

[6] 25 U.S.C. § 5325(k).

Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority, that" one or more of the following four reasons for rejection apply:

> (i) the amount of funds proposed in the final offer exceeds the applicable funding level to which the Indian tribe is entitled under this [part];
> (ii) the program, function, service, or activity (or portion thereof) that is the subject of the final offer is an inherent Federal function that cannot legally be delegated to an Indian tribe;
> (iii) the Indian tribe cannot carry out the program, function, service, or activity (or portion thereof) in a manner that would not result in significant danger or risk to the public health; or
> (iv) the Indian tribe is not eligible to participate in self-governance under section 5383 of this title[.]

22. Section 105(*l*) leases can be incorporated into ISDEAA funding agreements, as the Tribe proposed here. *See Maniilaq I*, 72 F. Supp. 3d at 237–39. IHS does not contest that the final offer provisions of the ISDEAA apply to the 105(*l*) lease proposal. *See* Letter from RADM Michael D. Weahkee, Principal Deputy Director, IHS, to W. Ron Allen, Chairman, Jamestown S'Klallam Tribe (July 11, 2019) ("IHS Decision Letter") at 1.

23. In any civil action challenging the rejection of a final offer, such as this one, "the Secretary shall have the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer (or a provision thereof) . . . ." 25 U.S.C. § 5387(d).

**GENERAL ALLEGATIONS**

24. Pursuant to section 813 of the IHCIA, the Tribe provides health care services to non-beneficiaries, as well as eligible Indians, at the Health Center. The Jamestown S'Klallam Tribal Council, in Resolution #34-16, "determined that the provision of health care services on a fee-for-service basis to non-beneficiaries . . . [would] not result in a denial or diminution of services to beneficiaries." In fact, the Council determined that providing services to non-beneficiaries "will result in an improvement to the efficiency and quality of the health care delivery system and the health care delivered to beneficiaries in the Tribe's Service Area." The

Council therefore resolved that "the Tribe will extend all available health services, provided at a Tribal Medical Clinic, under its Compact and Annual Funding Agreements to non-beneficiaries, on a fee-for-service basis." Resolution #34-16 (Aug. 30, 2016).

25. On September 28, 2018, the Tribe submitted a lease proposal to IHS pursuant to section 105(*l*) of the ISDEAA, 25 U.S.C. § 5324(*l*). The Tribe proposed that IHS lease the entire Health Center facility for $981,402.

26. The Health Center is a 34,632 square foot facility. The Health Center has approximately 17,000 registered patients. The Tribe's user population is comprised of 460 eligible Indian beneficiaries.

27. The parties eventually agreed that if IHS leased the entire Jamestown Family Health Center, the operational costs for the lease would be $514,826, and that these costs should be offset by $38,703 for Maintenance and Improvement ("M&I") and Facilities Support Account ("FSA") funding available to the Tribe. But IHS was willing to pay only a portion of the $476,123 that IHS attributed to services to IHS beneficiaries.

28. In an email dated May 9, 2019, Michael Weaver of IHS described how IHS arrived at its discounted amount. IHS used its "supportable space methodology" formula from the IHS OEHE Technical Handbook to calculate the square footage necessary to carry out the compacted IHS program. Although the Health Center measures 34,632 square feet, IHS determined that the "maximum supportable space," given the Tribe's user population, is just 7,060 square feet. Because only 20.4% of the facility (7,060/34,632) is "supportable space"

under the IHS formula, IHS would pay only 20.4% of the operational costs, or $105,025, less the agreed-on offset of $38,703, for total compensation of $66,322.[7]

29. The OEHE supportable space formula was developed to allocate M&I and equipment funds in IHS's annual Indian Health Facilities appropriation.

30. Although IHS did not clearly explain how it derived its "supportable space" of 7,060 square feet, it made clear in the May 9 email that the figure is such a small percentage of the Clinic's total size because of the large number of non-beneficiaries served by the Health Center. Mr. Weaver argued in the email that "IHS's determination that final lease compensation must reflect an offset of operational costs attributable to non-beneficiaries is supported by 25 U.S.C. § 5324(*l*)(2) requiring compensation only for 'reasonable' expenses and by statutory requirements demonstrating that IHS funds are to be used for eligible IHS beneficiaries."

31. On May 30, 2019, the Tribe submitted a final offer to resolve the impasse over lease funding. The Tribe pointed out that it is authorized to serve non-beneficiaries by section 813 of the IHCIA, 25 U.S.C. § 1680c(c), and a tribal resolution adopted pursuant to that statute. The Tribe provides such services on a fee-for-service basis, rather than using IHS funds. The Tribe proposed final lease compensation of $476,123—the agreed-on operational costs of $514,826 less $38,703 for the M&I and FSA offset.

32. In its Decision Letter dated July 11, 2019, IHS rejected the Tribe's final offer on the ground that the amount of funding proposed "'exceeds the applicable funding level to which [the Tribe] is entitled.'" IHS Decision Letter at 1 (citing 25 U.S.C. § 5387(c)(1)(A)(i)).[8] IHS

---

[7] *See* IHS Decision Letter at 2. In the May 9 email, IHS mistakenly applied the offset twice, once before the pro rata reduction and again afterward, resulting in proposed compensation of $61,761.

[8] IHS issued its decision 42 days after receiving the final offer, within the 45-day period required by the ISDEAA, 25 U.S.C. § 5387(b).

framed the central issue as follows: "whether the IHS must provide the [Tribe] with lease compensation associated with the provision of care to ineligible individuals." IHS Decision Letter at 1. IHS argues in its rejection letter that the agency cannot provide lease compensation to support services to ineligible, non-Indian patients—even when the services are provided under an ISDEAA agreement. *Id*. at 5–6.

33. IHS also argued that funds are not available to support health care for ineligible individuals under section 813; instead, costs associated with such care must be recovered from the non-beneficiaries through the fee-for-service structure. For these reasons, IHS concluded, the Tribe must recoup the costs of serving ineligible individuals from those individuals, not through a lease with IHS. IHS Decision Letter at 6. Therefore the Tribe's proposed compensation was unreasonable and in excess of the applicable funding level, requiring IHS to reject the Tribe's final offer. *Id*. at 7.

34. In this action, the Tribe challenges the IHS decision under 25 U.S.C. § 5331(a) and 25 U.S.C. § 5391(a).

## CAUSES OF ACTION

### COUNT 1—Declaratory Relief: The Tribe's Proposed Lease Compensation Does Not Exceed the Applicable Funding Level

35. The allegations in Paragraphs 1–34 are herein incorporated by reference.

36. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.

37. The parties agreed that the total valid operational costs eligible to be reimbursed under section 105(*l*) for the Health Center in FY 2018 were $514,826. The parties further agreed that this amount would be subject to an offset of $38,703 for M&I and FSA funding already

included in the funding agreement, for a net annual compensation figure of $476,123. IHS Decision Letter at 2.

38. In its final offer, the Tribe proposed total FY 2018 lease compensation of $476,123. IHS determined, however, that the "applicable funding level" for the lease was just $66,322, triggering rejection of the final offer under 25 U.S.C. § 5387(c)(1)(A)(i).

39. In making this determination, IHS relied on its theory that section 105(*l*) and its regulations allow IHS to compensate the Tribe for only that portion of the Health Center that IHS attributes, using the OEHE Manual's supportable space formula, to the provision of services to IHS beneficiaries.

40. IHS's use of a formula to deny lease compensation for services to non-beneficiaries is not supported by section 105(*l*) or its regulations. IHS must compensate the Tribe for a facility used to administer or deliver services under an ISDEAA agreement. One hundred percent of the Health Center's patients—beneficiaries and non-beneficiaries alike—are served under the Tribe's ISDEAA funding agreement with IHS, as authorized by section 813 and Tribal Council Resolution #34-16.

41. Because the entire Health Center is used to carry out an ISDEAA agreement, section 105(*l*) requires that IHS fully compensate the Tribe for the costs identified in the regulations. IHS's formulaic reduction for non-beneficiaries contravenes section 105(*l*) and its regulations, which allow for no such reduction. IHS's reduction also frustrates the intent of section 813 of the IHCIA to encourage tribes to expand the quantity and quality of services they provide.

42. The Tribe therefore seeks a declaration that IHS did not meet its burden to show, by clear and convincing evidence, that the Tribe proposed lease compensation in excess of the

applicable level, and that IHS's rejection of the final offer is therefore invalid. 25 U.S.C. § 5387(d).

**COUNT II—Mandamus and Injunctive Relief: Award and Fund the Final Offer**

43. The allegations in Paragraphs 1–42 are incorporated herein by reference.

44. 25 U.S.C. § 5331(a) authorizes this court to provide mandamus relief "to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [sub]chapter or regulations promulgated hereunder . . . ." Section 5331(a) also authorizes this court to provide injunctive relief "against any action by an officer of the United States or any agency thereof contrary to this [sub]chapter . . . (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract)." 25 U.S.C. § 5331(a). The language "to award and fund an approved self-determination contract" applies also to self-governance compacts and funding agreements. *See* 25 U.S.C. § 5391(a) ("For purposes of section 5331 of this title, the term 'contract' shall include compacts and funding agreements entered into under this subchapter.").

45. The IHS's rejection of the Tribe's final offer received May 30, 2019 was contrary to the ISDEAA and its implementing regulations. The IHS's rejection letter did not establish that the statutory rejection criterion relied on—that "the amount of funds proposed in the final offer exceeds the applicable funding level to which the Indian tribe is entitled" under the ISDEAA, 25 U.S.C. § 5387(c)(1)(A)(i)—applies. (The rejection letter did not claim that any of the other criteria for rejecting a final offer listed in 25 U.S.C. § 5387(c) applies.) IHS based its calculation of "the applicable funding level" using an unauthorized methodology at odds with the ISDEAA and its regulations. IHS's calculations, therefore, do not enable the agency to meet the

heavy burden "of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer . . . ." 25 U.SC. § 5387(d).

46. When IHS fails to meet the strict standard for rejecting a final offer, the statutory remedy is mandamus or "immediate injunctive relief to reverse [the rejection] or to compel the Secretary to award and fund" the agreement as proposed. 25 U.S.C. § 5331(a); *Navajo Nation v. U.S. Dep't of Interior*, 852 F.3d 1124, 1130 (D.C. Cir. 2017).

**PRAYER FOR RELIEF**

47. In accordance with 25 U.S.C. § 5331(a) the Tribe respectfully asks that this Court:

A. Declare that IHS did not meet its burden to demonstrate, by clear and convincing evidence, that it was justified in rejecting the Tribe's final offer on lease compensation on the ground that the proposed amount exceeded the applicable funding level;

B. Grant injunctive and mandamus relief to reverse the IHS's rejection of the Tribe's May 30, 2019 final offer and to compel the Defendants to enter into the FY 2018 lease as proposed by the Tribe and incorporate it into the ISDEAA funding agreement;

C. Award interest on the FY 2018 lease amount from the date of the decision rejecting the final offer under the Prompt Payment Act or other applicable law;

D. Award reasonable attorney fees and expenses in favor of the Tribe under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

E. Grant such other relief as the Court deems just.


Respectfully submitted,

/s/ Kaitlyn Klass
Kaitlyn Klass (D.C. Bar No. 1032219)
Hobbs, Straus, Dean, & Walker LLP
1899 L Street, N.W., Suite 1200
Washington, D.C. 20036
KKlass@hobbsstraus.com (Email)
202-822-8282 (Tel.)
202-296-8834 (Fax)

Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
516 SE Morrison Street, Suite 1200
Portland, OR 97214
503-242-1745 (Tel.)
503-242-1072 (Fax)

Attorneys for the Jamestown S'Klallam Tribe

DATED: September 5, 2019.